UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PEARSON,

                    Plaintiff,

          -against-

JUDGE STEVEN BROCKETT, of Middletown
City Court of New York; CITY OF
MIDDLETOWN POLICE DEPARTMENT OF
NEW YORK STATE; THE STATE OF NEW
YORK; THE ARRESTING POLICE OFFICERS
DATE OF ARREST 1-25-24,

                    Defendants.

24-CV-1510 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who was incarcerated at the Orange County Jail, brings this action, *pro se*,

under 42 U.S.C. § 1983, alleging that Defendants violated his rights. By order dated April 22,

2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without

prepayment of fees.[1] For the reasons set forth below, the Court dismisses Plaintiff's complaint.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought

by prisoners who seek relief against a governmental entity or an officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

(2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action for unlawful arrest and imprisonment against Judge Steven Brockett of the Middletown City Court of New York, the City of Middletown Police Department, and the Middletown police officers who arrested him on January 25, 2024. The following allegations are taken from Plaintiff's complaint. On January 25, 2024, Plaintiff was in

the Park Circle convenience store in Middletown, New York. While he was in the store, Plaintiff was approached by two police officers who told him that he had to leave the store. Plaintiff asked the officers why he had to leave, and the officers told him that someone had called to report that he was causing a disturbance in the store. Plaintiff denied doing anything wrong and again asked the officers why he had to leave the store. Plaintiff refused to leave the store, and, in response, the officers placed him under arrest and handcuffed him. The Middletown police officers took Plaintiff to the City Court, where Plaintiff appeared in front of Judge Brockett, who was familiar with Plaintiff. On January 23, 2024, just two days prior to the arrest, which is the subject of this action, Plaintiff had pleaded guilty before Judge Brockett to a charge of petit larceny stemming from a 2023 criminal case, and that case was adjourned for sentencing. Two days after tendering his plea before Judge Brockett in the 2023 criminal case, Plaintiff was arrested by the Middletown police officers. When Plaintiff appeared before Judge Brockett on the new charges, Judge Brockett released Plaintiff on his own recognizance on the new charges, but remanded Plaintiff to the Orange County Jail in connection with the 2023 criminal case in which Plaintiff had pleaded guilty but had not yet been sentenced.

From April 29, 2024, through June 10, 2024, Plaintiff filed seven letters in this case, some of which include documentation to supplement his complaint. (ECF Nos. 6-12.) In Plaintiff's letter dated April 24, 2024, he inquired about the status of this case and two other recent cases he filed. (ECF No. 6.) In his letter dated April 23, 2024, Plaintiff included copies of the securing orders showing that he was released on his own recognizance with respect to his January 25, 2024 arrest, but held without bail in the 2023 criminal case. (ECF No. 7 at 7-8.) Plaintiff's May 22, 2024 letter includes copies of the charges against him, copies of the securing orders that were included in the April 23, 2024 letter, and a copy of a statement from an

3

employee of the convenience store, indicating that the employee had called the police after observing Plaintiff pushing customers, that the police asked Plaintiff to leave, that Plaintiff left, but then returned and was arrested. (ECF No. 8.) In his May 23, 2024 letter, Plaintiff reiterates his complaints regarding Judge Brockett's handling of the criminal case, and he states that he believes that correction officers at the jail are trying to kill him. (ECF No. 9.) In his May 29, 2024 letter, Plaintiff expresses concern regarding his mail and requests confirmation that the court has received his letters. (ECF No. 10.) In his May 30, 2024 letter, Plaintiff requests that the court order Judge Brockett to turn over the court video footage of every time that Plaintiff was in the court room and order the jail to turn over all the phone records reflecting Plaintiff's calls to the Orange County Legal Aid Society. (ECF No. 11.) In his June 1, 2024 letter, Plaintiff reiterates that he is having problems with his mail, requests that the papers he has subsequently submitted be made a part of his lawsuit, and again complains about Judge Brockett's handling of Plaintiff's criminal case.

According to the records of the New York State Unified Court System, Plaintiff was incarcerated in the Orange County Jail on 2024 charges of disorderly conduct and trespassing and a 2023 charge of petit larceny, and his next court appearance is scheduled for August 19, 2024. *See* https://iapps.courts.state.ny.us/webcrim_attorney/DefendantSearch [https://perma.cc/JYK7-J7GM]. It appears from the records of the New York State Unified Court System that, on June 10, 2024, Plaintiff was released on his own recognizance. *Id.*

## DISCUSSION

### A.    Judicial Immunity

Plaintiff's claims against Judge Steven W. Brockett of the Middletown City Court must be dismissed. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally,

"acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . .." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff has not alleged any facts showing that Judge Brockett acted beyond the scope of his judicial responsibilities or outside his jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Judge Brockett for "acts arising out of, or related to, individual cases before him," he is immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Judge Brockett because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute].").

5

**B.    Eleventh Amendment**

Plaintiff's claims against the State of New York are barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims against the State of New York are therefore barred by the Eleventh Amendment and are dismissed.

**C.    Claims against the Middletown Police Department**

Plaintiff's claims against the Middletown Police Department must also be dismissed because city agencies or departments do not have the capacity to be sued under New York law. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

Plaintiff's claims against the Middletown Police Department may be construed as claims against the City of Middletown. When a plaintiff sues the City of Middletown under Section 1983, however, it is not enough for the plaintiff to allege that one of the City of Middletown's employees or agents engaged in some wrongdoing. The plaintiff must show that

6

the City of Middletown itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In other words, to state a claim against the City of Middletown under Section 1983, the plaintiff must allege facts showing (1) the existence of a City of Middletown policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff's allegations do not suggest that a policy, custom, or practice of the City of Middletown caused a violation of his federal constitutional rights. The Court therefore also dismisses Plaintiff's clams against the City of Middletown for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.     Claims against the Middletown Police Officer who arrested Plaintiff**

Because Plaintiff asserts that he was unlawfully arrested and imprisoned, (ECF No. 1 at 9), the Court considers whether Plaintiff can state a claim for false arrest claim against the arresting officers.

A claim for false arrest under Section 1983 looks to state law as a starting point to determine the elements of a claim for false arrest. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 378 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section

1983 claims and courts should not "mechanically apply" the law of New York State); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks omitted)).

If "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," the arrest is privileged, and the plaintiff cannot state a claim for false arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). Put another way, police officers may have had probable cause to arrest if they have acted reasonably, even if they were mistaken.

Plaintiff's complaint does not allege facts showing that officers lacked probable cause to arrest him. In fact, in a subsequent letter to the Court, Plaintiff includes a statement from an employee of the store indicating that the employee called the police because he observed Plaintiff disturbing customers. (ECF No. 8 at 7.) The employee also indicated in the statement that the police got Plaintiff to leave, but he returned, and the police arrested him, and that the employee does not want Plaintiff back at the store or on his property. (*Id.*) Because the information that Plaintiff submitted to the court suggests that the police officers had probable cause to arrest him, he does not state a false arrest claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### E.    Ongoing Criminal Proceedings

Plaintiff's criminal proceedings are ongoing, and his next court appearance is scheduled for August 19, 2024. To the extent that Plaintiff, in bringing this action, asks this Court to intervene in proceedings pending in state court, the Court must dismiss those claims. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Heicklen v. Morgenthau*, 378 F. App'x 1, 2 (2d Cir. 2010) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973)). This doctrine has been extended to civil actions. *See Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

*Younger* abstention seeks to avoid federal court interference with ongoing state criminal prosecutions, state-initiated civil enforcement proceedings, and state civil proceedings that involve the ability of state courts to perform their judicial functions. *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 49-50 (2d Cir. 2017) (summary order). Thus, abstention is

9

appropriate in only three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

If a "federal lawsuit implicates the way that New York courts manage their own . . . proceedings — a subject in which 'the states have an especially strong interest' — a State's interest is most likely implicated, warranting abstention under *Younger*. *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973)).

When any of these types of proceedings are pending in state court, the *Younger* doctrine bars federal courts from ordering injunctive relief that interferes with the state court proceedings. "State proceedings are pending for *Younger* purposes until all appellate court remedies have been exhausted." *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 290 n.6 (S.D.N.Y. 2000).

Plaintiff's requests that this Court order Judge Brockett to take specific action in the criminal proceeding implicates how the state court performs it judicial function and manages its proceedings. *Younger* abstention therefore applies, and this Court refrains from exercising jurisdiction over this action and will not intervene in those proceedings. *Falco*, 805 F.3d at 428.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). All other requests are denied as moot.

Should Plaintiff wish to assert claims regarding his mail and the actions of correction officers while he was incarcerated at the Orange County Jail, he may file a new action to address

those claims. Any new action that Plaintiff files must be accompanied by the $405.00 filing fee or a request to proceed IFP.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:    July 22, 2024
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

11